UNITED STATES v. NATIONAL SURETY CO.

(Circuit Court of Appeals, Fifth Circuit. November 2, 1907.)

No. 1,654.

INTERNAL REVENUE—DISTILLER'S BOND—LIABILITY OF SURETY FOR TAX.

> Where the government made an assessment against a distiller of the tax on spirits made from material used and not reported, and a portion of such spirits were found seized and sold, and the tax on such part paid from the proceeds, the surety on the distiller's bond, when charged with liability for the assessment, is entitled to credit for the part of the tax so paid, but not for the remainder of the proceeds of the sale.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 29, Internal Revenue, §§ 64, 65.]

In Error to the Circuit Court of the United States for the Northern District of Georgia.

The following is the opinion of the Circuit Court, by Newman, District Judge:

In this case it appears that B. F. Witt was a registered distiller, and the National Surety Company of New York was surety on his distiller's bond. The government seized Witt's distillery, and in the distillery warehouse were 10 packages of distilled spirits, containing 416⁶/₁₀ gallons, the tax upon which, at $1.10 a gallon, was $458.26. After the seizure of the distillery, an assessment was made against Witt for distilled spirits made from material in excess of that reported as having been used by the distiller.

Counsel have made an agreed statement of facts in writing in this case, which is substantially as follows:

"It is agreed by and between counsel for both parties, plaintiff and defendant, in the above-stated case, that said case may be submitted to the court without the intervention of a jury, for consideration, determination, and adjudication, both as to the facts and law involved therein, and that the court be authorized to determine the facts, without the intervention and verdict of a jury, adjudge the law, make his findings, and render judgment thereon, as fully and completely as he could have done had the facts and evidence involved in said case been submitted to a jury for determination and verdict. It is further agreed that the facts involved in said case, and which shall be submitted to the court, are as follows, to wit: (1) That from and after the 15th day of December, 1903, and until the 10th day of May, 1904, the defendant, Benj. F. Witt, was engaged in the business of a distiller, and operated registered grain distillery No. 21, district of Georgia, at Georgetown, in the county of Quitman, said state. (2) Defendant admits the execution and delivery of the two bonds sued upon, referred to and described in the petition of the United States, which said bonds are hereby referred to and made a part of the evidence in this cause. (3) That on the 10th day of May, 1904, the distillery operated by the said Benj. F. Witt, for the operation of which said bonds were given, and which is named in said bonds, was seized by the United States authorities, together with the distillery premises, ten packages of corn whisky, containing 416.6 gallons, in the warehouse, one package of corn whisky, containing 26 gallons, found in the meal room near the distillery premises, and six packages, containing 258 gallons of corn whisky, found in the upper story of a gin house in the possession of one Sol Vining, situated about one-fourth of a mile from said Witt's distillery premises. That said gin house was not a distillery warehouse. It is agreed that the above-mentioned six packages of corn whisky found and seized in the gin house of Sol Vining, and the one package seized and found in Witt's meal house, was liquor that had been produced at the aforesaid distillery of B. F. Witt, and had not been put in the distillery warehouse, and that no warehouse stamps had been put on the aforesaid packages, and that the tax had not been paid thereon, and that said packages of corn whisky of said Witt were removed from said distillery and deposited in said gin house and meal room by and with the knowledge and consent of said Benj. F. Witt. It is further admitted that this whisky was distilled from meal and material used and not reported by said Witt to the collector, nor entered on his distiller's book. (4) It is further agreed that on the 14th day of June, 1904, the United States Commissioner of Internal Revenue assessed the defendant, B. F. Witt, $585.20 taxes on 532 gallons of spirits not reported or warehoused by said Witt, as shown by the excess material used by him, and said assessment sheet is hereby referred to and made a part of the facts and evidence agreed upon in this cause. Notice of said assessment and demand for the payment of the taxes assessed was mailed to B. F. Witt, as provided by law, on the 16th day of June, 1904. (5) That three distraint warrants, Nos. 402, 403, and 428, dated, respectively, August 6, 1904, and October 27, 1904, were regularly issued by H. A. Rucker, collector of internal revenue—No. 402 being for the sum of $585, amount of taxes, and $35.40 interest and penalty; No. 403 being for $140.36 and $8.48 interest and penalty (afterwards abated by the government); No. 428 being for $6.16 taxes and 36 cents interest and penalty—which said distraint warrants are referred to and made a part of the evidence and facts agreed on in this case. * * * (7) It is agreed that said assessment of $585.20 is based on the failure of said B. F. Witt to account for 152 bushels of corn meal and material delivered and used at said distillery, which should have produced 532 gallons of whisky, said 532 gallons not being warehoused or reported by said B. F. Witt, the tax upon which should have been $585.20, for which distraint warrant No. 402 was issued. (8) It is further agreed that no credit was entered in behalf of said B. F. Witt or said National Surety Company, surety on said bonds, on the assessments for the net proceeds of the sales of the seized whisky, to wit: Ten packages, netting $71.79; one package, netting $2.43; six packages netting $48.49—and that no credit was entered for the net proceeds of the sale of the said distillery apparatus, amounting to $85.50,

and that each of said several sums was covered into the treasury of the United States. (9) It is further admitted by defendants that no part of the assessment of $585.20 assessed by the Commissioner of Internal Revenue for the month of May, 1904, against said Benj. F. Witt as taxes on spirits distilled by him during the period from March 19 to May 10, 1904, has been paid by either of the defendants in this case, except the net proceeds arising from the seizure and sale of said B. F. Witt's property, hereinbefore set out, which said proceeds and net sums arising from said sales defendant insists should be applied to the reduction of said assessment, interest, and penalty."

It will be perceived from the foregoing that it is admitted in this case that the distilled spirits seized outside the distillery warehouse in Vining's gin house, and in the meal room, was a part of the spirits made from excess material, and that the tax on spirits found, amounting to $283.80, plus $28.60, aggregating $312.40, was paid out of the proceeds of the sale of this particular spirits. The question presented in the case is whether or not the surety on Witt's bond is entitled to have this credited on the amount of the assessment of $585.20. It is claimed on behalf of the government that where spirits are seized and forfeited to the government, that although the tax on the same is paid out of the proceeds arising from its sale, the surety on the distiller's bond cannot set up that payment of tax as against the assessment covering the spirits so sold. In the case of the United States v. Ulrici, 111 U. S. 38, 4 Sup. Ct. 288, 28 L. Ed. 344, the question here involved was presented as to a distiller's warehouse bond. The general scope of the decision in that case may be gathered from the headnote, as follows: "The sureties on a distiller's bond for payment of taxes are discharged by seizure of the spirits for fraudulent acts of the distiller, and sale of them by the marshal, and payment of the taxes by the marshal out of the proceeds of the sale." In the opinion by Mr. Justice Woods, this language is used: "It is clear that the object of exacting this bond is to make sure the payment of the tax. It would seem, therefore, that if the tax is paid within the time limited, either by the distiller or out of the proceeds of the spirits subject to the tax, the object for which the bond was taken is accomplished, and it becomes functus officio, and the obligors are discharged. The contention of the counsel for the government is that the forfeiture of the spirits on which a tax is due for the fraudulent act of the distiller in seeking to evade its payment is a punishment for the offense, criminal or quasi criminal, of the distiller, and that the application of the proceeds of the forfeited spirits to the payment of the tax cannot have the effect of relieving him from the obligation of his bond. Such, in our opinion, is not the true construction of the law regulating the imposition and collection of the tax on distilled spirits."

It is said, however, on behalf of the government, that the bond in question in the Ulrici Case was a warehouse bond, that the bond in this case is a distiller's bond, and that the two bonds are differently conditioned. A distiller's bond (section 3260, Rev. St. [U. S. Comp. St. 1901, p. 2114]) is "conditioned that he shall faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions." A warehouse bond is "conditioned that the principal named in said bond shall pay the tax on the spirits as specified in the entry, or cause the same to be paid, before removal from said distillery warehouse," etc. I do not think the difference in the two bonds, or the character of the bonds, is at all material in determining the question here involved. To my mind, the point is that the surety, so far as liability is claimed in this case, agrees to become responsible for the taxes accruing against the distiller. That there is such liability for taxes on a distiller's bond is now settled. It is one of the "duties" assumed by the surety on the distiller's bond. United States v. National Surety Company, 122 Fed. 904, 59 C. C. A. 130, and cases cited. As to the present suit, the effort is to make the surety pay the tax on spirits which, according to the government's rule and its calculation, was made from material used and not reported. A part of the liquor made from the material not reported was found and sold, and the tax on the part so found paid to the government. Now, so far as that part of the tax is concerned, can the surety on the bond be required to pay it to the government again? Whatever the liability on a distiller's bond as

distinguished from a warehouse bond may be otherwise, it is not material here; the simple question presented in this case being the one just stated, and I understand that question to be fully answered by the decision of the Supreme Court in the Ulrici Case. Counsel for the government has cited and relies upon the case of United States v. United States Fidelity & Guaranty Co., 144 Fed. 866, decided by District Judge Platt, for the District of Connecticut. Judge Platt did not consider the Ulrici Case in point in the case he was deciding, and it probably was not. It is not entirely clear from that case as reported what property was sold, the proceeds of which the surety desired credited as against his liability on the bond. But it is spoken of as "distillery property"; and if it is true that the distillery premises were sold, or any property of the distiller other than the spirits on which the assessment was made, an entirely different question was presented from that arising in this case. The tax on the spirits sold here had to be paid because it could not be turned over to the purchaser without the stamps being affixed, and the purchase of the stamps, of course, paid the tax. The facts here, in my opinion, brings the case squarely within the decision of the Supreme Court in the Ulrici Case. I do not think, however, that the surety is entitled to have a set-off as against its liability for the assessment for excess material, for any more than the tax actually paid to the government on the spirits seized. The small excess received from the spirits sold, over the tax and expenses, should be treated, I think, as forfeited to the government. It is because the tax has been once paid out of the proceeds of the spirits sold that the surety is entitled to credit for the same. The result is that the government is entitled, as against the surety company, to a judgment for the difference between $585.-20, the amount of the assessment on the excess material, and $312.40, the tax paid on the spirits seized in Vining's gin house and in his meal room, leaving a balance of $272.80, for which amount, with interest and penalty, the government is entitled to a judgment.

F. C. Tate, U. S. Atty., and John W. Henley, Asst. U. S. Atty. Charlton E. Battle and W. G. Love, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

PER CURIAM. This is an action on a distiller's bond, conditioned as follows: "If the said Benjamin F. Witt shall, in all respects, faithfully comply with all the provisions of law relating to the duties and business of distillers, and shall pay all penalties incurred or fines imposed on him for a violation of any of the said provisions, and shall not suffer the lot or tract of land on which the distillery stands, or any part thereof, or any of the distilling apparatus, to be incumbered by mortgage, judgment or other lien, during the time in which he shall carry on said business, then this obligation shall be void; otherwise it shall remain in full force"—to recover an assessment for taxes amounting to $585.20, with interest, and the specific penalty of 5 per cent. thereon on 532 gallons of distilled spirits not reported or warehoused, and theretofore in part seized and sold by the United States, and in which the surety claims that the proceeds of the sale should be applied to the payment of the tax assessed on the spirits sold. The Circuit Court considered the case identical in principle with United States v. Ulrici, 111 U. S. 38, 4 Sup. Ct. 288, 28 L. Ed. 344, and gave judgment accordingly. The opinion of the court, Newman, Judge, as found in the transcript, is elaborate, and we concur in the reasoning and conclusion.

Judgment affirmed.